UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOSEPH SANKO,

       Plaintiff,

    v.

GARY LANIGAN, et al.

       Defendants.

No. 18-CV-05725 (NLH)(JS)


OPINION

APPEARANCE:

Joseph Sanko
# OS01729711
Northern State Prison
168 Frontage Road
Newark, NJ 07114

    *Plaintiff, Pro se*

HILLMAN, District Judge

    Plaintiff Joseph Sanko, a New Jersey state inmate at South Woods State Prison ("South Woods") at the time of the underlying events,[1] seeks to commence a civil action pursuant to 42 U.S.C. § 1983 against New Jersey Governor Phil Murphy, New Jersey Department of Corrections ("NJDOC") Commissioner Gary Lanigan,

---

[1] According to a letter filed September 21, 2020, Plaintiff was transferred to Northern State Prison.  ECF No. 8.  Accordingly, the Court will direct the Clerk to update Plaintiff's mailing address.

South Woods Administrator Willie Bond (collectively the "Non-Medical Defendants"), NJDOC Health Services Unit Director Dr. Hesham Soliman, South Woods Medical Director Dr. Robert Woodward, NJDOC Acting Statewide Patient Advocate Margret Reed, MA, South Woods Doctor "Dr. Diaz," South Woods Nurse Practitioner ("N.P.") Renee Mills (collectively the "South Woods Medical Defendants"), "St. Frances" Hospital,[2] and St. Francis surgeon Dr. Scott Miller (collectively the "St. Francis Defendants").[3]

Plaintiff, proceeding <u>in forma pauperis</u>, alleges various constitutional and statutory violations and negligence by Defendants; essentially, Plaintiff alleges that he fell and hurt his knee after administration of the wrong medicine made him dizzy, and that the resulting knee surgery and treatment was substandard and resulted in pain and infection.  Complaint, ECF No. 1; IFP Order, ECF No. 7.  For the reasons below, after screening pursuant to 28 U.S.C. § 1915(e)(2)(B), the Complaint will be dismissed.

---

[2] The Court presumes that Plaintiff refers to St. Francis Medical Center in Trenton.

[3] Plaintiff brings the claims against each non-institutional defendant in their individual and official capacities.  ECF No. 1, p. 13, ¶ 16.

I.   <u>BACKGROUND</u>[4]

In May 2014, after receiving the wrong medication,
Plaintiff fell and injured his knee on a shower tile.  ECF No.
1, ¶¶ 17-18.  Because there was no external bleeding, no
"emergency code" was called and no nurse and medical staff were
called.  <u>Id.</u> at ¶ 19.  Plaintiff was returned to his cell, where
he "completely passed out...until the next morning."  <u>Id.</u> at ¶
20.

After Plaintiff submitted a sick call request, a nurse
examined Plaintiff and scheduled him for x-rays.  <u>Id.</u> at ¶ 21.
N.P. Mills examined the x-rays, diagnosed a broken patella, and
prescribed Tylenol.  <u>Id.</u> at ¶ 22.  After Plaintiff complained of
continued pain, South Woods medical staff scheduled Plaintiff
for a total knee replacement at St. Francis with Defendant Dr.
Miller.  <u>Id.</u> at ¶ 23.  Plaintiff alleges that Dr. Miller
"knowingly placed inferior parts inside [P]laintiff's knee per
NJDOC policy[.]"  <u>Id.</u> at ¶ 24.  Plaintiff also alleges that
unsanitary hospital conditions caused multiple post-operative
infections; Plaintiff recalls, for example, "Dr. Miller standing
over [Plaintiff] in the hallway outside the operating room with
his [scalpel] raised over his leg asking if he was ready to get
this done."  <u>Id.</u> at ¶ 25.  After surgery, Dr. Miller

---

[4] The Complaint's allegations are presumed to be true for
screening purposes.

characterized Plaintiff's knee as "really messed up" and "the worst he had ever seen." Id. at ¶ 28.

After Plaintiff returned to South Woods, Plaintiff complained of pain, numbness, headaches, nausea, spasms, and mobility issues. Id. at ¶¶ 29-30. After meeting with N.P. Mills, Plaintiff began physical therapy, which only exacerbated the pain. Id. at ¶ 31. Plaintiff's complaints "fell on deaf ears," and the pain and unsanitary treatment continued, including medical staff examining Plaintiff without changing gloves. Id. at ¶¶ 31-32.

In November 2017, after Plaintiff complained, Plaintiff was transferred to an administrative segregation medical unit at Trenton State Prison, where he received the wrong medication to treat infection. Id. at ¶ 32. Plaintiff experienced more swelling, immobility, and heat in his knee, subsequently diagnosed as another infection. Id. at ¶ 33. Plaintiff ultimately endured six surgeries. Id. at p. 10, ¶ 4.

Plaintiff alleges that Defendants' actions have resulted in "extreme pain and difficulty in movement due to a degenerative leg injury," including "the threat of possible amputation." Id. at ¶ 6. Plaintiff asserts violations of his federal and state constitutional and statutory rights, specifically deliberate indifference to his medical needs and cruel and unusual punishment. Id. at ¶¶ 37-41. Plaintiff seeks declaratory,

injunctive, compensatory, and punitive relief; essentially, Plaintiff seeks better medical treatment, compensation for the injuries suffered, and protection from retaliation and poor treatment resulting from this Complaint.

II.   <u>STANDARD OF REVIEW</u>

The Prison Litigation Reform Act ("PLRA") requires district courts to review complaints in those civil actions in which a prisoner is proceeding <u>in forma pauperis</u>, seeks redress against a governmental employee or entity, or brings a claim with respect to prison conditions.  <u>See</u> 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

To survive <u>sua</u> <u>sponte</u> screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  <u>Fair Wind Sailing, Inc. v. Dempster</u>, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)).  "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

"[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).  "Court personnel reviewing pro se pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may be making."  See Higgs v. Atty. Gen. of the U.S., 655 F.3d 333, 339-40 (3d Cir. 2011) (quoting Jonathan D. Rosenbloom, Exploring Methods to Improve Management and Fairness in Pro Se Cases: A Study of the Pro Se Docket in the Southern District of New York, 30 Fordham Urb. L.J. 305, 308 (2002)).  However, while pro se pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).

III. DISCUSSION

A.   Non-Medical Defendants

The Complaint fails to state a claim against the Non-Medical Defendants in their official capacities because the Eleventh Amendment bars suit against states, and claims made against state officials in their official capacities are treated as claims made against the state. Anderson v. Pennsylvania, 196 F. App'x 115, 117 (3d Cir. 2006).  Accordingly, all claims

against the Non-Medical Defendants in their official capacities will be dismissed.

Plaintiff's claims against the Non-Medical Defendants in their individual capacities are also incognizable because claims against "supervisory officials who do not participate in individual medical care decisions," and "simply fail[] to intervene in ... medical care ... [are] not viable under the Eighth Amendment." Stewart v. Pennsylvania Dep't of Corr., 677 F. App'x 816, 819 (3d Cir. 2017) (citing Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) ("[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official...will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.")). "If a prisoner is under the care of medical experts ..., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Id. at 236.

Thus, medical grievances to a non-medical prison official when the prisoner is being treated by a prison doctor will not subject the non-medical prison official to liability under § 1983. Id. (citing Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993)); see Natale v. Camden County Correctional Facility, 318 F.3d 575, 581-82 (3d Cir. 2003) (analyzing Fourteenth Amendment

claim for inadequate medical care under the standard used to evaluate similar Eighth Amendment claims).

Here, Plaintiff makes essentially the same allegations against non-medical Defendants Governor Murphy, NJDOC Commissioner Lanigan, and South Woods Administrator Bond: that they failed to respond to complaints from Plaintiff or his family about Plaintiff's treatment.  The Court interprets the Complaint as alleging Eighth Amendment/deliberate indifference claims, arguing that the Non-Medical Defendants failed to act despite personal knowledge of Plaintiff's medical condition through "communications from [P]laintiff's family," "written pleas," and "prisoner grievances."  ECF No. 1, ¶¶ 8-10.

However, if a prisoner is under the care of medical experts, administrators who are not "themselves physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Davis v. Prison Health Servs., Inc., 558 F. App'x 145, 150 (3d Cir. 2014) (quoting Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (dismissing claims after the point that plaintiff was first under medical care because "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment

scienter requirement of deliberate indifference.").  Without any allegation of direct personal involvement, this is insufficient to state a claim.  Foye v. Wexford Health Sources Inc., 675 F. App'x 210, 214 (3d Cir. 2017) (denial of administrative remedies by non-medical defendants was not actionable because it constituted deference to the judgment of medical personnel). Accordingly, all claims against the Non-Medical Defendants merit dismissal.

B.   St. Francis Defendants

Plaintiff asserts claims against two private defendants: St. Francis Hospital and surgeon Dr. Miller, presumably a St. Francis employee.  Because the Complaint fails to allege sufficient facts supporting an allegation that the St. Francis Defendants "acted under color of state law," the claims against them will be dismissed.

An essential element of a § 1983 action is that the conduct complained of was "committed by a person acting under color of state law."  Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993).  "Although it is possible for a private party to violate an individual's § 1983 rights, the individual ...is not relieved of the obligation to establish that the private party acted under color of state law.  Id. (affirming dismissal where defendant pharmacy did not contract directly with corrections

entities to provide off-site prescription filling services and had "no contact whatsoever with a state actor").

"Private hospitals are not transformed into state actors merely because they received federal and state funding and are subject to accompanying regulations."  White v. Willingboro Twp., No. CV 18-10964 2020 WL 3604091, at *7 (D.N.J. July 2, 2020) (citing Schneller v. Crozer Chester Med. Ctr., 387 F. App'x 289, 293 (3d Cir. 2010)).  Rather, a "nominally private entity" is a "state actor when it is controlled by an agency of the State, when it has been delegated a public function by the State, when it is entwined with governmental policies, or when government is entwined in [its] management or control[.]"  Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 296 (2001).

In determining the existence of a nexus between a doctor and the state, "[i]t is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State."  West v. Atkins, 487 U.S. 42, 55-56 (1988).  For example, a doctor is a state actor, even in the absence of a contract with the state, where the doctor voluntarily agreed to treat an inmate for orthopedic care on four separate occasions over a six-month period.  Conner v. Donnelly, 42 F.3d 220, 225 (4th Cir. 1994).  Conversely, a private medical provider does

10

not become a state actor merely by providing treatment in an emergent care setting.  Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 827 (7th Cir. 2009); see also Boyter v. Brazos County, 2011 WL 1157455 (S.D. Tex. 2011) (private physician entitled to summary judgment on Eighth Amendment claim alleging insufficient medical care for a knee surgery while incarcerated at a county jail where examinations of prisoner took place only in defendant's private office, and state or county officials had no influence over defendant's treatment decisions); Hernandez v. Palakovich, 2010 WL 4683822 (M.D. Pa. 2010) (holding no state action when plaintiff was injured in a routine surgery to remove a liquid fluid from his eye, prison officials transported plaintiff but had no further involvement, and defendant is not alleged to have any relationship to the prison or state); Urena v. Wolfson, 2010 WL 5057208 (E.D.N.Y. 2010) (dismissing complaint where private hospital is not a state or federal actor and private physician had no contractual relationship or formal ties with the Bureau of Prisons and treatment took place only in his private office, never at prison).

Here, the only nexus asserted between the St. Francis Defendants and the state is an assertion that NJDOC policy mandated the use of "particular parts" in Plaintiff's knee surgery.  The Complaint does not assert the nature of this mandate, including whether the St. Francis Defendants were

actually bound by NJDOC policy.  The Complaint asserts a single visit for surgery and a directive from Dr. Miller to return, without any indication that any follow-up visit occurred. Accordingly, no claim is stated against the St. Francis Defendants and the Complaint will be dismissed against those Defendants.

This dismissal is without prejudice, and Plaintiff may move to amend the existing Complaint to expand upon his § 1983 claim against the St. Francis Defendants to demonstrate that either acted "under color of state law."  Any amendment should also, however, address the Court's additional concerns below.

C.   Eighth Amendment claims against all Defendants

Plaintiff makes two substantive allegations encompassing claims against all Defendants: that an unidentified prison official caused Plaintiff's knee injury by administering the wrong medication, and that subsequent negligence or malpractice by the other Defendants exacerbated the injury, including poor infection-control practices.  Neither is actionable.

To state a cognizable Eighth Amendment claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  "[T]o succeed under these

principles, plaintiffs must demonstrate (1) that the defendants were deliberately indifferent to their medical needs and (2) that those needs were serious." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). The second prong is satisfied by the extensive treatment, including surgery, implying Defendants' acknowledgment of the severity of Plaintiff's medical needs.

As to the first prong, the denial of medical care, when based on non-medical factors, may violate the Eighth Amendment. See Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) ("If necessary medical treatment is delayed for non-medical reasons, a case of deliberate indifference has been made out.") (internal quotation marks and alterations omitted). However, a "naked assertion that Defendants considered cost...does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment." Winslow v. Prison Health Servs., 406 F. App'x 671, 674 (3d Cir. 2011) (citing Reynolds v. Wagner, 128 F.3d 166, 175 (3d Cir. 1997) ("[T]he deliberate indifference standard of Estelle does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society."); Johnson v. Doughty, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The cost of

13

treatment alternatives is a factor in determining what constitutes adequate, minimum-level medical care, but medical personnel cannot simply resort to an easier course of treatment that they know is ineffective.").

Moreover, any such allegation "must not be conclusory"; that is, a complaint should identify: (1) relevant policies; (2) the basis for concluding that cost-saving policy affected treatment; and (3) the specific treatment that was denied pursuant to that policy.  Winslow, 406 F. App'x at 674; cf. Robinson v. Corizon Health, Inc., No. CV 12-1271, 2016 WL 7235314, at *12 (E.D. Pa. Dec. 13, 2016) (distinguishing Winslow where the plaintiff was denied medical care outright on the basis of cost considerations, not "simply claiming disagreement with the treatment provided").

The Complaint here does not satisfy that standard.  Where Plaintiff does go beyond cursory mentions of "unlawful conditions," ECF No. 1, ¶¶ 7-15, the only intentional actions alleged are "sub-standard" or "inferior" medical devices knowingly implanted in Plaintiff's knee.  ECF No. 1, ¶¶ 24, 28. Nowhere in the Complaint does Plaintiff explain the basis for the allegation that any medical devices were sub-standard, or for concluding that there existed a NJDOC practice of utilizing such devices.  Indeed, Plaintiff even acknowledges that Dr. Miller made "no mention...about the use of sub-standard

14

parts...or that he disapproved of using something that was likely to be ineffective."  ECF No. 1, ¶ 28.

Rather, the allegations center on poor operative and post-operative treatment by the Medical and St. Francis Defendants leading to, and failing to remedy, infection.  ECF No. 1, ¶ 29, et seq.  However, "...claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'"  Franco-Calzada v. United States, 375 F. App'x 217, 220 (3d Cir. 2010) (affirming sua sponte dismissal of a "simple negligence claim" where plaintiff alleged slip and fall from a ladder and deliberate indifference delaying x-ray of broken fingers for several days and surgery for two weeks); White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990) ("If the doctor's judgment is ultimately shown to be mistaken, at most what would be proved is medical malpractice, not an Eighth Amendment violation.").  Only "unnecessary and wanton infliction of pain" or "deliberate indifference to the serious medical needs" of prisoners is sufficiently egregious to rise to the level of a constitutional violation.  Id.

Plaintiff's deliberate indifference claims are further undermined by the Complaint's acknowledgement of consistent (albeit, according to Plaintiff, subpar) treatment.  The Complaint alleges that Plaintiff, upon injuring his knee in May 2014, was seen promptly after submitting a sick call request

and, after further complaints, was scheduled in June 2014 for total knee replacement surgery at St. Francis.  ECF No. 1, p. 14, ¶ 18-24.  Plaintiff acknowledges having been seen regularly thereafter, including on his own initiative.  ECF No. 1, ¶ 27, et seq.  This, too, merits dismissal.  See Stewart, 677 F. App'x at 820 (affirming summary judgment in favor of medical defendants where plaintiff challenged the adequacy of interventions but "received no less than seventeen evaluations..., two orthopedic consultations, three physical therapy consultations, numerous prescriptions for pain and anti-fungal medications, and five x rays, and...there is no evidence that any [d]efendant failed to give him care when it was requested.").

Finally, to the extent that Plaintiff's Complaint may adequately allege state or common law medical malpractice, negligence, or other claims, the Court declines to exercise supplemental jurisdiction.  See 28 U.S.C. § 1367(c)(3) (stating a district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction"); see also Petrossian v. Cole, 613 F. App'x 109, 112 (3d Cir. 2015) ("Because the Court dismisse[s] all claims over which it ha[s] original jurisdiction, it ha[s] the authority to decline to exercise supplemental jurisdiction ... over the remaining state-

law claims.").  The Court notes, however, that this dismissal is without prejudice as to the right to assert any potential negligence or malpractice claims under state law.

IV.  <u>CONCLUSION</u>

For the above reasons, the Court will dismiss the Complaint without prejudice.  Plaintiff may move for leave to file an amended complaint within 60 days of this Order addressing the concerns expressed in this Opinion accompanying subject to this Court's review under § 1915(e)(2).

An appropriate order follows.


Dated:  March 24, 2021          s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.